**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MENDEL R.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 17 C 5407** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | **Magistrate Judge Finnegan** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff Mendel R. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff filed a brief explaining why the case should be reversed or remanded and the Commissioner responded with a competing motion for summary judgment in support of affirming the decision. On February 19, 2019, the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). After careful review of the record, the Court now grants the Commissioner's motion.

## BACKGROUND

Plaintiff applied for SSI on September 19, 2014, alleging disability since November 1, 2007 due to bipolar disorder, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), depression, and acid reflux. (R. 140, 158). Born in 1976, Plaintiff was 38 years old at the time of the application, making him a younger individual. (R. 140). He completed two years of college and lives by himself in an apartment but relies on his parents for financial support. (R. 498, 513-14, 524-25). Plaintiff's work

history is minimal. He was employed as a waiter from July 1999 to June 2001, and again from January to April 2002. He also worked in retail from September 2006 to April 2007, and held an administrative job at a cleaning company from May to July 2007. (R. 160). Most recently, Plaintiff attempted to perform unspecified freelance work in 2011 and 2012 but those efforts did not constitute substantial gainful activity. (R. 13, 151, 505).

The Social Security Administration denied Plaintiff's application initially on January 23, 2015, and again upon reconsideration on June 17, 2015. (R. 47-77, 80-84, 86-89). He filed a timely request for a hearing and appeared before administrative law judge Daniel Dadabo (the "ALJ") on March 16, 2016. (R. 480). The ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from vocational expert Susan A. Entenberg (the "VE"). (R. 482-542). On June 3, 2016, the ALJ found that Plaintiff's bipolar disorder, ADHD, PTSD, and anxiety disorder with panic attacks are severe impairments, but that they do not meet or equal any listed impairment. (R. 13-14). After reviewing the record in detail, the ALJ found that Plaintiff is not disabled because he has the residual functional capacity ("RFC") to perform a significant number of jobs available in the national economy, including dishwasher and janitor. (R. 14-21). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

In support of his request for reversal or remand, Plaintiff argues that the ALJ: (1) made a flawed RFC determination that failed to account for his difficulties working in proximity to others and his moderate limitations in concentration, persistence, or pace; (2) improperly found him capable of performing jobs beyond his reasoning level; and (3)

erred in evaluating his subjective statements regarding the limiting effects of his symptoms. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence and there are no errors warranting reversal or remand.

## **DISCUSSION**

### A.    **Standard of Review**

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act. In reviewing this decision, the court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulation. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In making its determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and

quotation marks omitted)).    Where the Commissioner's decision, "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

B.    **Five-Step Inquiry**

To recover disability benefits under the SSA, a claimant must establish that he is disabled within the meaning of the SSA.  *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016).  A person is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to law for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy."  *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520).  If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five.  *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.  Analysis**

**1.  Mental RFC**

Plaintiff argues that the case must be reversed or remanded because the ALJ's RFC determination failed to account for his moderate limitations in social functioning and concentration, persistence, or pace.  A claimant's RFC is the maximum work that he can perform despite any limitations.  20 C.F.R. § 416.945(a)(1); SSR 96-8p.  "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions."  *Harper v. Berryhill*, No. 16 C 5075, 2017 WL 1208443, at *6 (N.D. Ill. Apr. 3, 2017) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).  *See also* 20 C.F.R. § 416.927(f)(2).

The ALJ found that Plaintiff has the RFC to perform only simple and unskilled work involving simple decision-making, and he cannot work in coordination with others or have any public contact, including even incidental public contact.  (R. 14, 17, 20).  In making this determination, the ALJ gave great weight to the January 1, 2015 and June 11, 2015 opinions from State agency psychologists Howard Tin, Psy.D., and Donald Cochran, Ph.D., and assigned minimal weight to the May 20, 2014 opinion from Plaintiff's treating internist, Robert M. Wolfe, M.D.  (R. 17-20).  Plaintiff does not challenge the weight assigned to these opinions but argues that the ALJ ignored important findings from Dr. Tin and Dr. Cochran.

**a.  Working in Proximity to Others**

Plaintiff first objects that the ALJ improperly omitted a restriction against working in proximity to others.  To evaluate this argument, it is necessary to understand Sections

I and III of the mental RFC Assessment. Section I is "effectively a worksheet on which a medical consultant sets forth summary conclusions." *Capman v. Colvin*, 617 F. App'x 575, 577 (7th Cir. 2015). The agency's Program Operations Manual System ("POMS") describes the purpose of Section I as "chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation." *Id.* at 578-79 (quoting POMS DI 25020.010(B)(1)).[1] Although an ALJ "should not ignore limitations recorded in Section I, the POMS directs that '[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III.'" *Id.* at 579 (quoting POMS DI 24510.063(B)(2)).[2] Indeed, "[i]t is the narrative written by the psychiatrist or psychologist in section III . . . that adjudicators are to use as the assessment of RFC." *Id.* (quoting POMS DI 25020.010(B)(1)).

Dr. Tin and Dr. Cochran both completed the worksheet summary in Section I relating to Plaintiff's mental abilities. One portion of the worksheet asks whether Plaintiff can "work in coordination with or in proximity to others without being distracted by them." (R. 55, 71-72). The State agency physicians indicated that Plaintiff is moderately limited in this area. (R. 55, 72). Based on this answer, Plaintiff insists that Dr. Tin and Dr. Cochran affirmatively found him to have moderate limitations working in coordination with *and* in proximity to others, yet the ALJ ignored the latter finding. (Doc. 20, at 10-11). As the Commissioner correctly notes, however, given the use of the disjunctive "or," the answer to this question, standing alone, is at best ambiguous as to whether Plaintiff has

---

[1]     POMS section found at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010, last visited on 4/12/2019.

[2]     POMS section found at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510063, last visited on 4/12/2019.

difficulties working in coordination with others, in proximity to others, or both. (Doc. 28, at 3). The ALJ therefore needed to look to the written narrative in Section III for clarification. *Capman*, 617 F. App'x at 579 (an ALJ "may reasonably rely on the examiner's narrative in Section III . . . where it is not inconsistent with the findings in the Section I worksheet.").

In Section III of the RFC Assessment, Dr. Tin and Dr. Cochran made clear that Plaintiff's primary problem is with social *interaction*, stating he has "difficulty in interacting appropriately with the general public and admits to having difficulty interacting socially, so limit [to] work tasks that do not require interaction with the general public." (R. 57, 73). The ALJ reasonably concluded that a person with difficulties interacting socially should not work in coordination with others and so incorporated that limitation from Section I into the RFC. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). As for any problems Plaintiff may have working in proximity to others, the ALJ accounted for them by precluding even incidental public contact. Nothing in the Section III narrative suggests that Plaintiff has difficulties being in proximity to coworkers and supervisors. To the contrary, Dr. Tin and Dr. Cochran found Plaintiff has no limitations in his ability to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior. (R. 56, 72). Plaintiff has waived any challenges to these findings by failing to raise them in his briefs. *Goffron v. Astrue*, 859 F. Supp. 2d 948, 958 (N.D. Ill. 2012).

Plaintiff argues that other evidence in the record supports his assertion that he cannot work in proximity to others. For example, in his May 20, 2014 Mental Disorders

Report, Dr. Wolfe indicated that Plaintiff has extreme limitations in social functioning and that encounters with other people or groups of people "triggers anxiety."  (R. 356, 358). As noted, however, the ALJ assigned minimal weight to this opinion, finding it "not well supported," "internally inconsistent," and "inconsistent with substantial other evidence." (R. 19).  Once again, Plaintiff's failure to assert any objections to this aspect of the ALJ's decision results in waiver.  *See, e.g., J.I.B. v. Colvin*, No. 1:14-CV-01601-TWP-MJD, 2015 WL 8568925, at *3 n.2 (S.D. Ind. Nov. 13, 2015) ("Arguments that are not raised or are raised in skeletal form and not developed are waived.").

In his reply brief, Plaintiff makes a new argument concerning a June 2, 2012 consultative examination he had with Kenneth M. Levitan, M.D., in connection with a previous application for disability benefits (not at issue here).  (Doc. 33, at 3-4). Specifically, Plaintiff notes that during that exam, he became angry and irritated upon questioning, exhibited some paranoid and delusional-like ideation, and was volatile at times.  (R. 320, 322).  Plaintiff does not explain how this evidence demonstrates an inability to work in proximity to coworkers and supervisors (all Dr. Levitan said on that topic was that Plaintiff can communicate with coworkers and a supervisor albeit with some difficulties).  (R. 322).  Plaintiff focuses instead on the fact that the ALJ failed to mention Dr. Levitan's opinion in his decision.  Yet again, Plaintiff has waived this argument, in this instance by raising it for the first time in his reply brief.  *Davis v. Colvin*, No. 13 C 5204, 2016 WL 278859, at *10 (N.D. Ill. Jan. 22, 2016) (citing *Frey v. E.P.A.*, 751 F.3d 461, 466 n.2 (7th Cir. 2014)).

Putting aside the issue of waiver, Plaintiff is correct that "[e]arlier evidence, such as previous physicians' opinions, can be considered relevant when adjudicating

subsequent applications for benefits." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).  At the same time, an ALJ has a "duty to develop a full and fair record" and must obtain an updated medical opinion from a medical expert "[w]here additional material medical evidence is received after the state agency has reviewed the evidence." *Cox v. Astrue*, No. 1:12-CV-00125-MJD-TWP, 2012 WL 6649228, at *7 (S.D. Ind. Dec. 20, 2012).  Dr. Levitan evaluated Plaintiff in May 2012, more than two years before Plaintiff filed his latest application for benefits on September 19, 2014.  The ALJ thus acted reasonably in securing an updated consultative examination from Anna Maria Wegierek, Psy.D., on January 10, 2015.[3]  (R. 429-32).

Plaintiff told Dr. Wegierek that he has difficulties interacting socially but his mental status examination was "unremarkable in general, aside from a few difficulties with attention."  (R. 430, 432).  He was cooperative, displayed no preoccupations, and exhibited no psychotic reactions that would indicate social, personal and occupational regression.  (R. 431).  There is no dispute that Dr. Tin and Dr. Cochran relied on Dr. Wegierek's report in determining Plaintiff's RFC.  (R. 53, 67).  More importantly, the record reflects that the psychologists also reviewed and considered Dr. Levitan's earlier evaluation.  (R. 50, 71) (observing that Dr. Levitan's statement "is consistent with totality of medical evidence however statement is more than 3 years old and not current.").  Since the ALJ afforded great weight to the State agency opinions, and those opinions took Dr. Levitan's opinion into account, any error the ALJ may have made in failing to expressly mention Dr. Levitan's opinion is harmless and does not warrant remand or reversal.  *See*

---

[3]      If the ALJ had *not* obtained an updated medical evaluation, Plaintiff likely would have cited that failure as a reason to reverse and remand the case.

*Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (harmless error applies to social security cases).

Plaintiff finally objects that the ALJ erred "when he asked the [VE] about a limitation in working in proximity to others, but failed to explain why he did not include such a limitation." (Doc. 20, at 12) (citing *Kukec v. Berryhill*, No. 16 C 9805, 2017 WL 5191872, at *3 (N.D. Ill. Nov. 9, 2017)). As noted, the ALJ effectively did include a limitation against working in proximity to the public by precluding even incidental contact, and the record does not support similar limitations with respect to coworkers and supervisors. *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011) ("The ALJ needed only to include limitations in his RFC that were supported by the medical evidence and that the ALJ found to be credible.").

Moreover, on the record presented, the mere fact that the ALJ asked a hypothetical question about working in proximity to others does not mean such a restriction had to be included in a final RFC assessment. "When interacting with the vocational expert, the ALJ will often pose a series of hypothetical questions to the expert prior to determining the claimant's RFC. The ALJ may include more or less restrictions in these hypothetical questions than he ultimately finds." *Johnson v. Astrue*, No. 1:11-CV-01074-SEB, 2012 WL 4481359, at *5 (S.D. Ind. Sept. 28, 2012). Plaintiff cites nothing in the record suggesting that the ALJ's inclusion of a general proximity limitation in a hypothetical question to the VE was in any way an acknowledgment that Plaintiff, in fact, has that limitation. *Compare Sayles v. Barnhart*, No. 00 C 7200, 2001 WL 1568850, at *9 (N.D. Ill. Dec. 7, 2001) (remanding where the ALJ adopted a VE opinion about available work

that was "based on a hypothetical that departs from the factual findings that the ALJ made.").

Viewing the record as a whole, the ALJ adequately accounted for Plaintiff's social limitations in the RFC assessment by precluding him from working in coordination with others or having even incidental public contact. These findings are consistent with the State agency psychologists' opinions which the ALJ reasonably afforded significant weight. Plaintiff's motion to reverse or remand the case for further consideration of this issue is denied.

### b.    Concentration, Persistence, or Pace

Plaintiff next argues that the RFC determination is flawed because the limitation to simple work involving simple decision-making failed to properly account for his moderate limitations in concentration, persistence, or pace. "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 C(3). Generally, an ALJ cannot account for limitations in concentration, persistence, and pace by restricting a claimant to simple, routine, repetitive tasks. *See, e.g., Walters v. Astrue*, 444 F. App'x 913, 918 (7th Cir. 2011). That said, the Seventh Circuit has held that "an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). *See also Milliken v. Astrue*, 397 F. App'x 218, 221-22 (7th Cir. 2010); *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002) (no error where physician translated moderate mental limitations into a

specific RFC assessment that the plaintiff could still perform low-stress, repetitive work). That is what happened here.

Dr. Tin and Dr. Cochran both found in Section I of the RFC Assessment that Plaintiff has moderate limitations in the ability to maintain attention and concentration and carry out detailed instructions, but is not significantly limited in his ability to: carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 55, 71-71). In the Section III narrative, Dr. Tin and Dr. Cochran explained further that despite Plaintiff's moderate deficits in sustaining concentration and persistence, he can: remember locations or work-like procedures; understand, remember, and carry out short and simple instructions; and perform simple unskilled tasks as long as he does not have to interact with the general public. (R. 55-57, 71, 73).

The ALJ gave these opinions significant weight (again, Plaintiff does not challenge this finding) and included the stated limitations in the hypothetical questions posed to the VE (along with the restriction of no working in coordination with others). (R. 529-30). Notably, the opinions are consistent with Dr. Wegierek's observation on January 10, 2015 that Plaintiff's mental exam was unremarkable except for "a few difficulties with attention," (R. 432), and even Dr. Levitan's stale June 2, 2012 opinion that Plaintiff could perform "simple and routine tasks" and "follow and understand instructions" though he could not retain them by the next working day. (R. 322). On this record, the ALJ did not err in

relying on the State agency opinions which translated Plaintiff's moderate limitations in concentration, persistence, or pace into an RFC for simple, unskilled work involving simple decision-making.

### 2.    Reasoning Level

In a related argument, Plaintiff objects that it was inconsistent for the ALJ to limit him to performing simple, unskilled work with simple decision-making and at the same time find him capable of performing jobs with a reasoning level of 2. The Dictionary of Occupational Titles ("DOT") assigns each job a General Educational Development ("GED") score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 946 (N.D. Ind. 2012) (quoting Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C(III), 1991 WL 688702). The GED scale is comprised of three divisions – reasoning development, mathematical development, and language development – and each division is divided into 6 levels. *Id.* For jobs with a reasoning development level of one, a claimant must be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* To perform reasoning development level two jobs, a claimant must be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

The parties agree that according to the DOT, the dishwasher and janitor jobs both require a reasoning level of two. Courts in this jurisdiction have not reached a consensus regarding the relationship between simple tasks under the DOT and the Social Security

regulations. Some courts have remanded cases to resolve a perceived conflict between VE testimony that a person limited to simple, routine tasks could perform jobs with a DOT reasoning level of two, and the DOT's description of reasoning level two jobs as requiring the carrying out of "detailed but uninvolved written or oral instructions." *See, e.g., Duty v. Berryhill*, No. 15-CV-1210-JPG-CJP, 2017 WL 679947, at *9 (S.D. Ill. Feb. 21, 2017); *Wetzel v. Comm'r of Social Security*, No. 4:13-CV-4070-SLD-JEH, 2015 WL 470202, at *8 (C.D. Ill. Feb. 3, 2015) (a claimant limited to one- to two-step unskilled tasks could perform reasoning level one jobs); *Schlattman v. Colvin*, No. 12 C 10422, 2014 WL 185009, at *6 (N.D. Ill. Jan. 14, 2014) (same).

As the Commissioner notes, however, other courts have declined to find a conflict in such situations, observing that the "DOT and Social Security regulations . . . use markedly different standards for addressing a claimant's ability to understand, remember, and concentrate on job duties." *Eggleston v. Colvin*, No. 13 C 5208, 2015 WL 2208221, at *5 (N.D. Ill. May 7, 2015) (citing *McCain v. Colvin*, No. 12 C 9652, 2013 WL 6283638, at *7 (N.D. Ill. Dec. 4, 2013)). "The regulations divide such abilities into only two categories – 'short and simple instructions' and 'detailed' or 'complex' ones – whereas the DOT uses a more graduated scale ranging from one to six that does not easily accommodate itself to the regulations' simple/complex dichotomy." *Stile v. Colvin*, No. 14 C 4379, 2017 WL 2908783, at *8 (N.D. Ill. July 7, 2017) (quoting *Thompkins v. Astrue*, No. 09 C 1339, 2010 WL 5071193, at *10 (N.D. Ill. Dec. 6, 2010)). These courts thus take the position that "a task may be 'simple' under the regulations and still involve the kind of 'detailed' tasks required under Level 2 reasoning." *McCain*, 2013 WL 6283638,

at *7 ("[N]o one-to-one parallel can be found between 'simple' as it is used under the regulations and the DOT's requirements.").

This Court finds the analysis in *Eggleston* and similar cases to be persuasive and agrees that jobs with a reasoning level of two such as dishwasher or janitor do not inherently conflict with an RFC for simple, unskilled work.  *See Mitchell v. Berryhill*, No. 16 C 6241, 2019 WL 426149, at *4 (N.D. Ill. Feb. 4, 2019) ("'[S]imple work restrictions . . . are not necessarily inconsistent with Reasoning Level 2 occupations.").  Indeed, the Seventh Circuit has indicated that "even workers who are markedly limited in their ability to understand, remember, and follow detailed instructions might still be able to perform jobs requiring *level 3* reasoning development."  *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) (emphasis added).  The question is thus whether there is other evidence in the record suggesting a conflict between Plaintiff's restriction to simple work and the VE's testimony in this case.  The Court finds there is not.

First and foremost, Plaintiff was represented by counsel at the administrative hearing but his attorney did not ask the VE any questions about reasoning levels or otherwise challenge the VE's testimony that Plaintiff can work as a dishwasher or janitor. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion[.]").  In addition, Plaintiff does not respond to the Commissioner's argument that reasoning development focuses on educational background as opposed to functional performance.  (Doc. 28, at 7-8) (quoting *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (General Educational Development "does not describe specific mental or skill requirements of a particular job, but rather describes the general

educational background that makes an individual suitable for the job.")). There is no dispute that Plaintiff has a high school diploma and completed two years of college. (R. 159, 498). Plaintiff fails to explain how this educational background makes him unsuitable for work as a dishwasher or janitor. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (claimant with the cognitive capacity to follow simple instructions could perform jobs with a reasoning level of three where she had finished high school and completed training to become a certified nurse's assistant).

Considering the specific facts and arguments presented in this case, including Plaintiff's failure to respond to any of the Commissioner's arguments or cases in his reply brief, the Court finds no error in the ALJ's reliance on the VE's testimony that Plaintiff can perform reasoning level two jobs such as dishwasher and janitor. The ALJ's decision on this issue is supported by substantial evidence and does not merit further consideration on remand.

### 3. Subjective Symptom Evaluation

Plaintiff finally argues that the ALJ committed reversible error in evaluating his subjective statements regarding the limiting effects of his impairments. The regulations describe a two-step process for evaluating a claimant's own description of his impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2. If there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In evaluating a claimant's symptoms, "an ALJ must consider

several factors, including the claimant's daily activities, h[is] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The Court is to give the ALJ's assessment of a claimant's subjective symptom allegations "special deference and will overturn it only if it is patently wrong," i.e., if it "lacks any explanation or support." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Burmester*, 920 F.3d at 510. A reviewing court should rarely disturb a subjective symptom assessment, as it lacks "the opportunity to observe the claimant testifying." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). The claimant bears the burden of showing that an ALJ's subjective symptom evaluation is "patently wrong." *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018).

Plaintiff first argues that the ALJ applied the wrong legal standard in evaluating his symptoms. Specifically, the ALJ began by reciting the following boilerplate language: Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 15). The Court agrees that such boilerplate is meaningless, but it is also "innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). *See also Dawn P. v. Berryhill*, No. 17 C 4707, 2019 WL 339603, at *4 (N.D. Ill. Jan. 28, 2019) (use of "not entirely consistent" boilerplate language does not alone warrant reversal if "the ALJ proceeded to give reasons explaining her ultimate finding."); *Esther C. v. Berryhill*, No. 18 C 407, 2019 WL 1254888, at *2 (N.D. Ill. Mar. 19, 2019) (quoting *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir.

2014)) (same boilerplate language "not fatal if it is accompanied by 'a detailed explanation of the evidence and [the ALJ's] reasoning about credibility.'"). *But see Minger v. Berryhill*, 307 F. Supp. 3d 865, 871-72 (N.D. Ill. 2018) (expressing concern that the same boilerplate language may indicate the ALJ was applying the wrong evidentiary standard).

Turning to the substantive analysis, Plaintiff argues that the ALJ failed to consider the side effects of his medications, including drowsiness and a need to lie down during the day and nap, sometimes for as long as eight hours. (Doc. 20, at 17). Plaintiff is incorrect. The ALJ acknowledged Plaintiff's testimony that his medications make him tired but noted that medical records routinely showed he experienced either no or only slight side effects. (R. 15, 16) (citing R. 417 (lorazepam helping "without causing side effects" on 12/17/2012); R. 400 ("Slight drowsiness from meds" but "[f]eeling much better" on 5/8/2013); R. 392 ("Feeling much better overall" and no complaints of fatigue on 7/12/2013); R. 400 ("Slight drowsiness from meds" on 9/8/2013); R. 448 ("Feeling well" and no complaints of fatigue on 4/7/2015); R. 444 (no complaints of fatigue on 6/10/2015); R. 440 (symptoms well-controlled, no present problem with fatigue on 11/2/2015); R. 436-37 ("some drowsiness at times" from lorazepam on 2/10/2016 so dosage reduced).

This evidence, which Plaintiff largely ignores, reasonably undermines his assertion that his medications cause disabling fatigue, and it was not patently wrong for the ALJ to discount Plaintiff's testimony on this issue. *See Cook v. Astrue*, 800 F. Supp. 2d 897, 909 (N.D. Ill. 2011) (an ALJ is permitted to "discount testimony regarding side effects of medication that are unsubstantiated by objective evidence."). Plaintiff insists that even if his fatigue is only slight, there is still a possibility that he will be off task more than 10% of the workday, which the VE testified would preclude all employment. (Doc. 20, at 17-18;

Doc. 33, at 9) (citing R. 534). The flaw in this argument is that no physician of record ever indicated that Plaintiff would be off task for any amount of time due to medication-related fatigue.[4] *See, e.g., Wright v. Colvin*, No. 13 C 6429, 2014 WL 4197852, at *9 (N.D. Ill. Aug. 25, 2014) (declining to remand case where "there is no evidence in the record of a physician or other expert stating that [the plaintiff] would be off-task at all.").

Plaintiff next objects that the ALJ failed to fairly assess his testimony that he has good days and bad days. (R. 508) ("[B]eing bipolar you're down and up, and down and up."). Specifically, Plaintiff accuses the ALJ of "cherry-picking" positive notes from the medical record and ignoring evidence supporting a finding of disability. This is not accurate. The ALJ discussed all of the medical evidence in detail, including Plaintiff's brief hospitalization in September 2011 following a romantic break-up, his report of occasional panic attacks in January 2013, and records documenting times when Plaintiff "appeared irritable, anxious, restless, and 'slightly hyper,' or 'mildly nervous.'" (R. 15-16). The ALJ also acknowledged that Plaintiff "periodically experienced exacerbation of his symptoms," but stressed that he "quickly stabilized, and his depression, anxiety, and panic symptoms have usually been well controlled." (R. 17). Plaintiff does not mention this evidence or challenge its accuracy. Nor does he address the ALJ's observations that Plaintiff's "primary care physician has successfully managed [Plaintiff's] symptoms through medication." (R. 16-17).

Significantly, Plaintiff does not articulate what happens when he has a bad day or explain how it would prohibit him from working. The only evidence Plaintiff cites in that regard is his testimony that before he started treating with Dr. Wolfe in October 2012, he

---

[4]     As previously discussed, the ALJ reasonably accommodated Plaintiff's difficulties with concentration, persistence, or pace stemming from his mental impairments.

did not want to get out of bed and "was in a very, very bad way." (Doc. 20, at 18) (citing R. 500-01). Plaintiff also made clear, however, that Dr. Wolfe now has given him a balance of medication that Plaintiff believes is effective. (R. 500). Consistent with that testimony, Plaintiff's treatment notes from December 2012 forward routinely show he was feeling well and did not require any specialized psychiatric care, and Plaintiff does not point to any contrary records. *Compare Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (remanding case for proper evaluation of treating psychiatrist's opinion regarding the functionality of a person with bipolar disorder who "responds erratically to treatment.").

Plaintiff finally argues that the ALJ failed to consider his testimony that stress, changes in routine, finances, acid reflux, family, and socializing trigger his mental impairment symptoms. (Doc. 20, at 19). To the extent this is simply a reiteration of Plaintiff's objections to the mental RFC, it fails for the reasons already stated. In his reply brief, Plaintiff reframes this argument as an objection that the ALJ relied too heavily on his daily activities in discounting his testimony. (Doc. 33, at 10). The ALJ noted that Plaintiff worked part-time as a freelance web designer at one point, lives alone, and is able to: drive a car; manage his personal care; make simple meals; do housework; go shopping; handle his own finances; and socialize with family members. (R. 17).

Contrary to Plaintiff's assertion, the ALJ did not equate these activities with an ability to work, but properly concluded that this level of activity is not consistent with Plaintiff's claims of total disability and suggests he "may be capable of a greater level of functioning than he alleges." (*Id.*). The Court finds nothing improper about this conclusion. *Chapman v. Berryhill*, No. 16-CV-015-JPG-CJP, 2017 WL 1019850, at *6 (S.D. Ill. Mar. 16, 2017) (citing *Pepper*, 712 F.3d at 369) ("While it may be error to equate

limited daily activities with the ability to work full-time, it is not error to consider daily activities; in fact, it is proper for an ALJ to consider a conflict between the plaintiff's claims about what she can do and the evidence as to her activities.").

Viewing the record as a whole, the ALJ's evaluation of Plaintiff's subjective statements is supported by substantial evidence. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (it is "the rare case" where a claimant can overcome the "considerable deference" afforded to credibility determinations). Plaintiff's request to remand the case for further consideration of Plaintiff's testimony is denied.

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment is denied, and the Commissioner's Motion for Summary Judgment [27] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: April 25, 2019

SHEILA FINNEGAN
United States Magistrate Judge